UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL S. DOWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:15-cv-814-WTL-TAB |
| ) | |
| BOARD OF SCHOOL TRUSTEES OF ) | |
| MADISON CONSOLIDATED SCHOOLS, ) | |
| ) | |
| Defendant. ) | |

### ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the Defendant's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Dkt. No. 27). The motion is fully briefed, and the Court, being duly advised, **GRANTS IN PART AND DENIES IN PART** the motion for the reasons and to the extent set forth below.

### I. APPLICABLE STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed, and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). The non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II. RELEVANT FACTS

Plaintiff Michael S. Dowell was employed as a health and physical education teacher at the Madison Junior High School from the fall of 2003 through early June 2013. He also served as athletic director at the junior high school and, over time, performed various coaching roles at both the junior high and high schools. On May 24, 2013, Dowell received notice from his principal that, due to a "justifiable decrease in the number of teaching positions," *i.e.*, a reduction in force, the principal had made a preliminary decision not to renew his contract for the 2013-14 school year. On May 25, 2013, Dowell requested and, some days later, received a conference with the superintendent of Madison Consolidated Schools ("District") to appeal the principal's preliminary decision. On May 30, 2013, Dowell received the superintendent's letter notifying him that he was upholding the principal's preliminary decision. The letter also notified Dowell that he had the option to appeal the decision to the Board, but Dowell chose not to pursue that appeal. In July 2013, one of the other health and physical education teachers at the junior high school resigned and Dowell applied for the position after the principal notified him of the cancellation of his contract. He decided not to request a meeting with the Board "so that he would not be viewed in a bad light when he applied for the position." The principal eventually notified Dowell that he was not hired for the open position.

## III. DISCUSSION

Dowell pleads four legal claims regarding the cancellation of his contract. First, by "impairing with Mr. Dowell's rights to an indefinite contract on the basis of his tenure" (Dkt. No. 1, ¶ 22), the cancellation violated Article I, § 10 of the United States Constitution ("No State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of

Contracts . . . .").¹  Second, for the same reason, it violated Article 1, § 24 of the Indiana Constitution ("No *ex post facto* law impairing the obligation of contracts, shall ever be passed."). Third, the cancellation violated the District's reduction-in-force ("RIF") policy.²  Fourth, the Defendant did not follow Ind. Code chapter 20-28-7.5 when cancelling his contract.

At issue before the Court in the instant motion is whether Dowell has forfeited all of his claims because he failed to exhaust his administrative remedies before bringing suit.³

### A. Federal claim—Count I

Non-prisoner claimants generally are not required to exhaust state judicial or administrative remedies before pursuing federal civil-rights claims under 42 U.S.C. § 1983. *Haywood v. Drown*, 556 U.S. 729, 766 (2009); *Patsy v. Board of Regents of the State of Florida*, 457 U.S. 496 (1982); *Horsley v. Trame*, 808 F.3d 1126, 1129 (7th Cir. 2015).  The Board cites *Gluck v. WNIN Tri-State Public Media, Inc.*, 879 F.Supp.2d 999, 1004-05 (S.D. Ind. 2012), and the district court's decision in *Horsley* 61 F.Supp.3d 788, 791 (S.D. Ill. 2014), *aff'd*, 808 F.3d 1126 (7th Cir. 2015), apparently as authority for its argument that Dowell was required to exhaust his federal constitutional claim.  But *Gluck* ruled only that a claimant suing for violation of a federal regulation must first exhaust the prescribed federal regulatory process for obtaining administrative relief, and *Horsley* explicitly held that the plaintiff in that case was *not* required to exhaust her state administrative remedies before pursuing a federal Second Amendment claim.

---

¹Dowell's summary of his claims in the Case Management Plan states:  "By ignoring Plaintiff's agreement with Defendant, Defendant disregarded Plaintiff's right to contract, which is [a] fundamental right under the United States Constitution."  Dkt. No. 11, § II. B.
²Dowell contends that he did not "meet the factors [in the District's policy] for individuals to be RIFed."  Dkt. No. 11, § II. B.
³The resolution of the merits of Dowell's federal constitutional claim has been stayed this case pending the Court of Appeals' decision in *Elliott v. Board of School Trustees of Madison Consolidated Schools*, No. 16-4168 (7th Cir.), an appeal of this Court's ruling in Cause No. 1:13-cv-319-WTL-DML, involving the same issue.

3

Therefore, Dowell was not required to exhaust state remedies before pursuing his federal claim that the Board's cancellation of his contract violated his rights under Article I, § 10 of the U. S. Constitution.

### B. State claims—Counts I, II, and III

Indiana generally requires exhaustion of administrative remedies before seeking judicial relief, even when a claimant pleads violations of the state's constitution.

> We have repeatedly emphasized the value of completing administrative proceedings before resorting to judicial review. The reasons for this requirement are well established: (1) premature litigation may be avoided; (2) an adequate record for judicial review may be compiled; and (3) agencies retain the opportunity and autonomy to correct their own errors. Even if the ground of the complaint is the unconstitutionality of the statute, which may be beyond the agency's power to resolve, exhaustion of administrative remedies may still be required because administrative action may resolve the case on other grounds without confronting broader legal issues. Ordinarily, an administrative agency must resolve factual issues before the trial court acquires subject matter jurisdiction. But exhaustion of administrative remedies is not required if a statute is void on its face, and it may not be appropriate if an agency's action is challenged as being ultra vires and void. More generally, if an action is brought upon the theory that the agency lacks the jurisdiction to act in a particular area, exhaustion of remedies is not required. To the extent the issue turns on statutory construction, whether an agency possesses jurisdiction over a matter is a question of law for the courts.

*Indiana Dept. of Environmental Management v. Twin Eagle, LLC*, 798 N.E.2d 839, 844 (Ind. 2003) (citations omitted).

> It is hornbook administrative law that potential plaintiffs must first exhaust their administrative remedies before seeking judicial relief. However, there are three recognized exceptions to this rule: direct resort to the courts is justified where (1) compliance with the rule would be futile, (2) the statute is charged to be void on its face, or (3) irreparable injury would result.

*LHT Capital, LLC v. Indiana Horse Racing Commission*, 895 N.E.2d 124, 127 (Ind. Ct. App. 2008) (citations omitted); *see also John C. & Maureen G. Osborne Revocable Family Trust v. Town of Long Beach*, 78 N.E.3d 680, (Ind. Ct. App. 2017) ("Under Indiana law, '[i]t is well-

established that, if an administrative remedy is available, it must be pursued before a claimant is allowed access to the courts,' as 'failure to exhaust administrative remedies deprives the trial court of subject matter jurisdiction.'"). Dowell was required to exhaust available administrative remedies before seeking judicial relief for his state-law claims.[4]

In Indiana, cancellation of teachers' contracts is governed by Ind. Code chapter 20-28-7.5. The version that was in effect during the cancellation of Dowell's contract—late May 2013 through early June 2013—reads, in relevant part, as follows:

> Chapter 7.5. Cancellation of Teacher Contracts
> Sec. 1.
>
> (a) This chapter applies to a teacher in a school corporation (as defined in IC 20–18–2–16(a)).
>
> \*   \*   \*
>
> (c) Except as provided in subsection (e), a principal may not decline to continue a professional or established teacher's contract unless the teacher is subject to a justifiable decrease in the number of teaching positions.
>
> (d) After June 30, 2012, the cancellation of teacher's [*sic*] contracts due to a justifiable decrease in the number of teaching positions shall be determined on the basis of performance rather than seniority. In cases where teachers are placed in the same performance category, any of the items in IC 20-28-9-1.5(b) may be considered.
>
> (e) A contract with a teacher may be canceled immediately in the manner set forth in sections 2 through 4 of this chapter for any of the following reasons:
>> (1) Immorality.
>> (2) Insubordination, which means a willful refusal to obey the state school laws or reasonable rules adopted for the governance of the school building or the school corporation.
>> (3) Justifiable decrease in the number of teaching positions.

---

[4] Exhaustion is required of state claims which a federal court hears under its supplemental jurisdiction. *See Frey v. Environmental Protection Agency*, 270 F.3d 1129, 1136 (7th Cir. 2001).

(4) Incompetence, including receiving:
  (A) an ineffective designation on two (2) consecutive performance evaluations under IC 20–28–11.5; or
  (B) an ineffective designation or improvement necessary rating in three (3) years of any five (5) year period.
(5) Neglect of duty.
(6) A conviction for an offense listed in IC 20–28–5–8(c).
(7) Other good or just cause.

Sec. 2.

(a) Before a teacher is refused continuation of the teacher's contract, the teacher has the following rights:
  (1) The principal shall notify the teacher of the principal's preliminary decision. The notification must be:
    (A) in writing; and
    (B) delivered in person or mailed by registered or certified mail to the teacher at the teacher's last known address.
  (2) The notice in subdivision (1) must include a written statement, subject to IC 5–14–3–4, giving the reasons for the preliminary decision.
  (3) Notification due to a reduction in force must be delivered between May 1 and July 1.

(b) For a cancellation of a teacher's contract for a reason other than a reduction in force, the notice required under subsection (a)(1) must inform the teacher that, not later than five (5) days after the teacher's receipt of the notice, the teacher may request a private conference with the superintendent. The superintendent must set the requested meeting not later than ten (10) days after the request.

(c) At the conference between the superintendent and the teacher, the teacher may be accompanied by a representative.

(d) After the conference between the superintendent and the teacher, the superintendent shall make a written recommendation to the governing body of the school corporation regarding the cancellation of the teacher's contract.

(e) If the teacher does not request a conference under subsection (b), the principal's preliminary decision is considered final.

(f) For items listed in section (1)(e)(3) [justifiable decrease in the number of teaching positions], (1)(e)(4), or (1)(e)(6) of this chapter, if the teacher files a request with the governing body for an additional private conference not later than five (5) days after the initial private conference with the superintendent, the

6

teacher is entitled to an additional private conference with the governing body before the governing body makes a final decision, which must be in writing, concerning the cancellation of the teacher's contract.

(g) For items listed in section (1)(e)(1), (1)(e)(2), (1)(e)(5), or (1)(e)(7) of this chapter, if, not later than five (5) days after the initial private conference with the superintendent, the teacher files a request with the governing body for an additional private conference, the teacher is entitled to an additional private conference with the governing body before the governing body makes a final decision. The final decision must be in writing and must be made not more than thirty (30) days after the governing body receives the teacher's request for the additional private conference. At the private conference the governing body shall do the following:
>	(1) Allow the teacher to present evidence to refute the reason or reasons for contract cancellation and supporting evidence provided by the school corporation. Any evidence presented at the private conference must have been exchanged by the parties at least seven (7) days before the private conference.
>	(2) Consider whether a preponderance of the evidence supports the cancellation of the teacher's contract.

Sec. 3.

At the first public meeting following a private conference with:
>	(1) the governing body under section 2(f) of this chapter; or
>	(2) the superintendent under section 2(b) of this chapter, if no conference with the governing body is requested;

the governing body may cancel a contract with a teacher by a majority vote evidenced by a signed statement in the minutes of the board. The decision of the governing body is final.

*   *   *

Sec. 6.

A contract entered into by a teacher and a school employer continues in force on the same terms and for the same wages, unless increased under IC 20-28-9-1.5, for the next school term following the date of the contract's termination unless one (1) of the following occurs:
>	(1) The school corporation refuses continuation of the contract under this chapter.
>	(2) The teacher delivers in person or by registered or certified mail to the school corporation the teacher's written resignation.
>	(3) The contract is replaced by another contract agreed to by the parties.

P.L. 90-2011, § 31 (effective July 1, 2011); P.L. 286-2013, §§ 87 and 88 (effective July 1, 2011 (retroactive)).[5]

Under this version of chapter 7.5, an Indiana teacher's contract continued in force unless the school corporation refused to continue it under the chapter, Ind. Code § 20-28-7.5-6(1), and any teaching contract could be cancelled because of a "justifiable decrease in the number of teaching positions," *i.e.*, a RIF, Ind. Code §§ 20-28-7.5-1(c) and (e)(3). In summary, the procedure for cancelling Dowell's contract had five steps: (1) the principal notified the teacher of her preliminary decision, (2) the teacher could request and receive a private conference with the superintendent, (3) after the conference, the superintendent made a recommendation to the Board, (4) the teacher could request and receive a private conference with the Board, and (5) the Board made a final decision. The Board argues that Dowell failed to exhaust his remedies and, thus, forfeited his state claims when he chose not to pursue his final avenue of relief by requesting a private conference with the Board. It is undisputed that Dowell did not request that private conference.

Dowell argues several reasons why he did not fail to exhaust his remedies. First, he argues that he was not required to exhaust his claims because the text of Ind. Code § 20-28-7.5-2 does not require teachers to pursue exhaustion; rather, it only gives them the right, the option, to have private conferences with superintendents and governing bodies. He cites no authority for the proposition that a statutory or regulatory process must use mandatory language before exhaustion is required, possibly because the law is against it: "Even when neither statute nor

---

[5]The 2013 amendments only corrected the statutory citations in §§ 1(d) and 6. The next amendments to chapter 7.5 became effective on July 1, 2015, P.L. 233-2015, §§ 208 and 209; P.L. 239-2015, § 4, after Dowell filed this suit on May 22, 2015 (Dkt. No. 1). The last amendment, P.L. 179-2016, § 9, became effective on July 1, 2016. All references to the statute in this entry are to the quoted version in effect in mid-2013.

agency rule specifically mandates exhaustion as a prerequisite to judicial review, the general rule is that a party is not entitled to judicial relief for an alleged or threatened injury until the prescribed administrative remedy has been exhausted." *Austin Lakes Joint Venture v. Avon Utilities, Inc.*, 644 N.E.2d 641, 644 (Ind. 1995).

Second, Dowell argues that Ind. Code § 20-28-7.5-2(b) "specifically states that the request for the private conference does *not* apply '[f]or a cancellation of a teacher's contract for . . . a reduction in force.' The notification required for cancellation only applies to situations *other than* cancellations due to a reduction in force." Dkt. No. 33 at 5. He is simply wrong. Section 2(b) does not contain any statement, direct or indirect, about the applicability of the right to private conferences to RIF cancellations. Instead, Dowell's argument is based solely on inference from § 2(b)'s exclusion of RIF cancellations from the requirement that principals' notices inform teachers of their right to request a private conference with the superintendent, but the inference is unreasonable. Regardless of the legislature's reason for excluding RIFs from § 2(b)'s notice requirement, no language in the statute excludes RIFed teachers from pursuing private conferences with the superintendent or the Board. Indeed, § 2(f) specifically provides that a RIFed teacher may request an "additional private conference" with the governing body no later than five days after he has had an "initial private conference" with the superintendent. Ind. Code § 20-28-7.5-2(f) (applies to teachers facing cancellation proceedings under § 1(e)(3) ("justifiable decrease in the number of teaching positions")). Moreover, § 2(f) and (g) allow teachers facing cancellations for any of the permitted reasons under § 1(e) to request an additional private conference with the governing body without a requirement of any notice. Dowell had a right under chapter 7.5 to request a private conference with the Board before a final decision on the cancellation of his contract.

9

Third, Dowell argues that the District's "Reduction in Force (RIF) Policy" (a copy of which he submitted with his response to the Board's motion (Dkt. No. 33-3)) does not require exhaustion and that the Policy governs, "even though it conflicts with IC 20-28-7.5-1(d)." Dkt. No. 33 at 6. He asserts that the District's policy "superseded IC 20-28-7.5-1(d) because the policy was bargained for contractually" and "[t]he legislature does not have the right to interfere with the parties' right to contract." Dkt. No. 33 at 6-7. He attached a copy of his contract to his response. Dkt. No. 33-1.

Dowell only *asserts* that a school corporation's RIF policy supersedes Ind. Code chap. 20-28-7.5 when the policy was, in some manner, bargained for. He cites no authority for this far-reaching proposition. Absent explicit and clear authority to the contrary, the Court will presume that state statutes prevail over school corporations' policies and teachers' contracts where they conflict or are inconsistent. *See* Ind. Code §§ 20-26-3-4 and 20-26-3-5[6]; *Fort Wayne Metropolitan Human Relations Commission v. Marathon Gas Station*, 926 N.E.2d 1085, 1089 (Ind. Ct. App. 2010).

---

[6]Ind. Code § 20-26-3-5 reads:

(a) If there is a constitutional or statutory provision requiring a specific manner for exercising a power, a school corporation that exercises the power shall exercise the power in the specified manner as a minimum requirement.
(b) If there is not a constitutional or statutory provision requiring a specific manner for exercising a power, a school corporation that exercises the power shall:
    (1) adopt a written policy prescribing a specific manner for exercising the power; or
    (2) comply with a statutory provision permitting a specific manner for exercising the power.
(c) A written policy under subsection (b)(1) must be adopted by the governing body of the school corporation.

In addition, the District's RIF policy and Dowell's 2012-13 teaching contract confirm the supremacy of the statute. At its start, the policy provides that, "[w]hen a reduction in force is determined to be needed under this policy, the provisions of I.C. 20-28-7.5 will be followed regardless of past practice," (Dkt. No. 33-3 at 1 (preamble)), and Dowell's contract states that "[t]his contract may be cancelled during its term for any of the grounds set forth in Ind. Code 20-28-7.5-1(e) pursuant to the procedures set forth in Ind. Code 20-28-6-2(d) and Ind. Code 5-14-3," (Dkt. No. 33-1, ¶ 6). There is no other term of Dowell's contract that addresses contract cancellation or the District's RIF policy. While Dowell is correct that, with regard to the teacher appeals process, the District's RIF policy appears to contradict Ind. Code § 20-28-7.5-2 in one respect—namely, it provides that, following a teacher's conference with the superintendent, the superintendent's "initial determination will be presented to the Board of Trustees for final action" (Dkt. No. 33-3, ¶ (A)4), thus skipping § 2(f)'s required opportunity for a private conference with the Board—in instances of conflict, the statutory terms prevail, absent contrary authority not cited by Dowell.[7]

Fourth, citing Ind. Code § 20-28-7.5-2(b) and the District's RIF Policy, Dowell argues that he "had no notice that he was required to meet with the Board of Trustees or that he was required to exhaust remedies. To hold him to this standard, without notice, would be unfair." Dkt. No. 33 at 8. He also contends that §2(b)'s exemption of RIF cancellations from its notice requirement "equitably estops the school from arguing that teachers are required to exhaust rights they don't even know they have." Dkt. No. 33 at 9. Because Dowell does not cite any

---

[7]The policy's appeal process differs from § 2 in other respects that are not contradictory, *e.g.*, the policy provides that RIFed teachers shall be notified of their right to request a conference with the superintendent and that the superintendent may request the attendance of the principal who made the preliminary decision. Dkt. No. 33-3, ¶ (A)4. These provisions only add to, they do not conflict with, the statutory procedures.

supporting authority or otherwise develop a legal due process or equitable estoppel argument, the arguments are forfeited.

Alternatively, his argument is meritless. As already noted, Indiana law requires exhaustion of administrative remedies, gives Dowell the right to a private conference with the Board, and mandates that the statute prevails over contrary ordinances, rules, policies, or practices. In addition, the District's RIF Policy specifically provides that the statute governs RIF-based contract cancellations. Finally, in this case, the superintendent's letter to Dowell upholding the principal's preliminary decision specifically notified him that he was entitled to a private conference with the Board. Dkt. No. 33-5. Therefore, Dowell had sufficient notice of his right to request a private conference with the Board; he, at least, had sufficient information to ascertain his appeal rights.

Fifth, Dowell argues that he was not required to exhaust his remedies because pursuing a conference with the Board would have been futile for two reasons: first, the Board could offer no administrative remedy for his constitutional claims and, second, the Board takes its direction from the superintendent and the principal and both were hostile toward him. As mentioned above, Indiana law requires exhaustion even when the issues are constitutional because it allows an administrative agency the opportunity to correct its own mistakes, find facts, develop the record, and resolve the issues on non-constitutional grounds. Second, Dowell fails to explain why he believes that the Board "takes its direction" from the superintendent and he provides no supporting evidence. The only evidence that he cites to show that the superintendent and principal were hostile to him *and* that they would use their control of the Board to render a private conference with the Board futile is the principal's failure to hire him, post-RIF, for the open physical education teaching position in the junior high school. As noted, Dowell alleges

that he did not receive a telephone call or an interview in response to his application, despite his favorable evaluations and awards.

Dowell's claim is grounded on no more than speculation and supposition. The facts on which he relies do not support a reasonable inference that pursuing a private conference with the Board would have been futile. Dowell did request and attend a private conference with the superintendent, accompanied by a representative, despite his current characterization of that exercise as futile. Even more important, however, is that he pled that "[b]ecause he knew there would be a job opening at the junior high school, in his department, he decided not to request a meeting with the Board so that he would not be viewed in a bad light when he applied for the position," Dkt. No. 1, ¶ 14, which directly contradicts his current position.

Dowell has failed to show that exhaustion of the administrative process with respect to his state claims was futile and he has pled himself out of that argument.

## IV. <u>CONCLUSION</u>

Defendant's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Dkt. No. 27) is **DENIED** with respect to Plaintiff's federal constitutional claim in Count I of his complaint and is **GRANTED** with respect to Plaintiff's state constitutional claim in Count I and to all claims pled in Counts II and III. The only claim remaining in this case is Plaintiff's federal claim that Defendant violated his rights under Article I, § 10 of the United States Constitution.

SO ORDERED: 8/29/17

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification